What we want to do initially is to speak to some opening remarks, and we want to make sure that everybody on the panels knows just exactly what this situation is resolving at. This situation deals with my parents' trust, and it's been going on for quite a number of years at this point, and quite frankly we are in a situation where the church entities have changed quite often, and have basically exhausted all the money from this, and I really have a problem with this, and I want to make points on the record that this is a situation where it should not happen whatsoever. This is my parents' money that they wanted to give to all the beneficiaries of this trust, and it's abominable that what's happened with this church, that they have just spent money galore, they're over, I'm assuming they're about $150,000 over than what is on the amount. They spent that kind of money, and there's nothing going to any of the beneficiaries, and I have real issues with that particular situation. I want to cover one matter here. Let me find where it is. It is a filing that I made with the bankruptcy court over the last couple of weeks, and it's a state court filing as well. It came in yesterday, if I'm not mistaken. It's dealing with the update of state court filings, contrary to the bankruptcy court order of stay by appellate, which appears to be What's happened is that going forward to the state court, which is necessary to authorization of the either vacature or the Basically, I've offered and filed a vacature, and Mr. CAC has filed paperwork to accept the appellant, and what's happened is that there was a necessary stay made by the bankruptcy court, and going on, Mr. CAC filed a motion to dismiss with prejudice each party to on appeal. They didn't get the memo, and quite frankly, what's happened is the judge has basically vacated this organization's filings because it is a motion to dismiss, and that's what they've done. So at this point in time, the state court does not have the ability to go forward with respect to authorization of the vacature or to confirm the organization's appeal. So this is basically the action of Mr. CAC has put the Southern California Conference out of court on this. Out of the state court or out of this court? The state court. Okay, but you spent a lot of time talking about this, but I don't understand how that impacts what we're doing, which is reviewing a decision based on a record before the bankruptcy court that's in the rearview mirror. We have a very limited portfolio of issues and range of motion. Exactly, but what's necessary has been requested by the panel is that anything that disturbs what's happening in this appeal has to be brought forward to you, and that's what I'm doing. Okay, I just don't understand. Maybe one of my colleagues, I don't understand how that intersects with this particular appeal, I guess to be blunt. What it does to be very candid of this, without this ability, the ability to file once this is done, it's gone because the state court has dismissed the court situations. You understand what I'm saying? It's a dismissal. Of the probate proceeding? This what? Of the probate proceeding? Yes. In its entirety? No, no. Okay. Okay. Let me back up. Let's go forward and say what's happened is the court has put both Southern California Conference and myself out of court. And what we're wanting to do is once this is completed, and again, I'm stepping back forward, but quite frankly, with not having this ability to either vacate the arbitration or to allow the situation, you've got to go to state court. State court is done. So at this point, it's not happening, and I'd like Mr. Kak to go forward and tell us why he did this and why he didn't allow it to happen. Well, we're at your seven minutes, so do you want to rest now and then take the rest on rebuttal? Let's rest. And then Mr. Kak will argue whatever Mr. Kak wants to argue, and then you can respond. That'd be fine. All right. So you have six minutes and 55 seconds, Mr. Kak.  Thank you, Your Honor. This appeal regards whether the arbitration award entered in the arbitration between Mr. Kak and the Southern California Conference of Seventh-day Adventists was properly approved by the bankruptcy court. And whether the bankruptcy court was correct in making two clerical errors to that arbitration award. The answer to both of those is yes on the record. When I say on the record, it's the record that counts in this case. And the problem that we have for Mr. Kalkins is that when the matter was presented to the bankruptcy court, that he failed to present the record from the arbitration. But we'll back up a second because we're going to encapsulate what Mr. Kalkins has been arguing about. We filed. We've received the arbitration award. It was final. We received it just after July 26, 2019. And we had 90 days in which to file something to do an amendment to that award. And we had an unlimited period of time in which to file to enforce it. We filed to enforce it in the Coconino County Superior Court. That filing was appropriate. But Mr. Kalkins wanted to have it held in the bankruptcy court. And he filed to have a hearing and some meetings and did some things to get it into the bankruptcy court. Once it was there, the party stipulated that the bankruptcy court would hear and decide all issues. And that made sense because the bankruptcy court approved the compromise that led to the arbitration. And it included, by the way, that compromise was listed by the debtors bankruptcy attorney as necessary to be resolved by the compromise so that they could go forward and file a plan. When they filed a plan, that compromise was approved a second time. We call that the stipulated settlement. And so then the question from that point was, well, who's going to be the arbitrator? When is it going to happen? And that proceeded exactly the way it was supposed to. The arbitrator made his award. There's one little edit that the arbitrator made to it. That's when it went to Coconino County. Thereafter, Mr. Kalkins wanted it to go to the bankruptcy court. And the party stipulated in open court to get going before the bankruptcy court, which is frankly where it belonged anyway because it's part of the plan. And the bankruptcy court, by minute order, confirmed the, and that's at docket 751, October 22, 2018, confirmed. And I think I misspoke on one item, but confirmed the party stipulated that the bankruptcy court would hear everything. So the bankruptcy court hears two issues, two separate petitions. One is to edit the, to correct a couple of errors in the arbitration. That is absolutely allowed under Arizona law. The parties have never disagreed that Arizona law applied. In fact, the detour is now saying that, gee, it shouldn't have been corrected. That one order correcting the arbitration award, and that is at docket 803, shouldn't have been entered. And it's a bit of a tempest in a teapot, a teacup, because the statutes involved are exactly just, on the issues before us are exactly the same. There's 90 days to apply to the court to amend under both statutes. He has exact same rights to have a vacature. Both statutes are identical. And under Arizona law, it is 12-3000-ETSEC, the 3001-ETSEC that applies to this type of case. Error in placing the wrong arbitration statute in the award was mine. It came from our office. The second error was the date by which Mr. Calkins was given additional time in which to submit evidence on the issue that we're really here on. What we're really here on is something to do with the probate action in California. We'll get to that in a second. But it was so painfully obvious from the transcript that we produced that the arbitrator was clearly talking about an earlier date than had been placed in the award, that that was a very simple one. And the change to the correct statute was also simple because it's the statute that applies by law in Arizona. And when it came time for the hearings and decisions by the bankruptcy court, Mr. Calkins didn't oppose in his response of pleadings. And he didn't take a position in front of the court when we had oral argument. That's what we call a waiver for Mr. Calkins. You can't just sit back. So that order's fine. Now we go to the next one. And that's the one confirming the arbitration award. And the problem with Mr. Calkins' position is what I stated at the start. He has to prove his case. He went before the bankruptcy court and produced no portions of any transcripts, nor did he produce anything of merit that would show that that award shouldn't be confirmed. The bankruptcy court was very specific in its findings on the record and went into detail. And we filed that record with the court. We had the auto-transcribed, the pertinent portions. And Mr. Calkins had a copy of that. And to date, he's not produced anything that shows that there was an error. Indeed, what he's done, in my mind, and I hope I'm correct, is misquoted what's going on in this case. His position, his major position, has always been that the arbitrator was supposed to rule on all issues. We see the culmination of that. I mean, it is, I think, 36 references in his opening brief, and I have to say more than that in his reply brief. But he misreads that, the original stipulation, and it couldn't be more obvious than when we look at his reply brief at page 2. At page 2, he misquotes the stipulation, and he misquotes it badly. He leaves out the typical breaks that he places in the quotation. He leaves out the specific and important portions of that document and makes the claim that the arbitrator was to decide all issues. That's not what it says. And I think I've quoted it to the court, I don't know if you'd like to hear it again, but the specific items are, and they include the probate action. When we look at docket 391 at page 5 and 6, we see the recitals, which are incorporated into the moving portion of the stipulation, which is approved by court order. That provides, references the properties that Mr. Calkins invested in with his mother's money and put it into his name. We know earlier he said, well, gee, he's really concerned about his parents' money. It was his parents' money that he, while he had conservatorship, that he put into properties that he placed in his and his wife's name. Moving right along, we are looking at page 6B. Further disputes between the parties include that SCC filed a proof of claim and Calkins filed an objection to that proof of claim. SCC has filed a motion to convert Chapter 11 bankruptcy case to a Chapter 7. SCC has filed a partial joint or an objection to the disclosure statement, and this is the important part. Other issues in the Superior Court of the State of California, County of Humboldt, under case number, that's the probate. We go on to say that there's other various disputes between the parties under C. The parties have agreed to settle, this is the important language, all disputes above and any and other disputes and differences they may have as follows. It's not that the arbitrator will decide all issues, and I want to say that, and I won't belabor it too much. It's that all issues are settled except those reserved to the arbitration. And when he quotes it in his reply brief, he omits the pertinent language. The reason it's omitted is because his desire has always been to litigate in probate court. In fact, his desire has been to litigate in every court that he possibly can. And I will highlight that by the fact that his newest filing in this court, the update of state court filings, is improper from the standpoint of the order confirming that is at docket. Oh, I'm going to find it here. Order granting enforcement of bankruptcy court orders confirming arbitration award and denying request for sanctions, denying application for attorney's fees, and denying motion for reconsideration, May 23, 2019 at docket 805, specifically provided that the Coconino County action would be dismissed with prejudice, each party to bear their own attorney's fees and costs. The reason for that was that all issues in the Coconino County court case were brought up to the bankruptcy court and decided by the bankruptcy court. When you say all issues, these are all issues between you and Mr. Calkins. That's correct. All issues still remaining that weren't decided in the arbitration, but including whether to approve the arbitration, excuse me, converted into a judgment and the issue about, actually it's all issues that were going to be heard by the court. And the two major issues heard by the court were limited to correction of the arbitration award and the enforcement of that award. Okay. And so the issue before us today is whether Mr. Calkins has proven, has presented appropriate evidence that the arbitrator did not rule in compliance with the stipulated settlement that was approved by the bankruptcy court in the confirmation order and the chapter 11 plan order. He presented nothing that showed that. His whole argument was that that arbitrator was to decide all issues. It's a vacuous argument. There's nothing to it. The judge was very specific in his findings. He went through each and every one of the things that the arbitrator was to find or determine and determine that the arbitrator did it all right. So there is no basis for overturning that arbitration award unless there's a basis for vacatur. The reason I say that is because arbitration awards are very difficult to overturn for good reason. You have to have substantial evidence. He presented basically nothing to the bankruptcy court. We then go to the second thing. What about vacatur? He had no grounds for vacatur. He alleged there was corruption with no evidence. He alleged there was ex-party communication, which was the most innocuous item in the entire file. We've addressed that. I won't go into detail. That was a simple email asking about a date issue. We noticed that. It was a timing thing. It was a timing thing. And I noticed that Mr. Calkins didn't get a copy. Within four hours, we got him a copy. That's when I noticed. It's innocuous. It's nothing. So I could go through each of the vacatur items, but there wasn't anything. There's no corruption. There's no bribery. We set forth and included a declaration under oath. Mr. Calkins put nothing under oath. And that showed that there was no bribery. Frankly, he chose the arbitrator. We did not choose the arbitrator. He had the right to select arbitrators, and we just picked one. We picked one of the three. And it was someone we've never met before. So there's no basis for that. Then when I look at it, I say, what evidence did he ever present to the bankruptcy court that there was a basis for vacatur or that the arbitrator didn't decide everything was posted? And the answer is nothing. All right, and your time is up. So that's a good place to end, I think, is the answer is nothing. And thank you for your argument, and we'll let Mr. Calkins respond. Mr. Calkins, you have six minutes and 55 seconds. Thank you very much. Unfortunately, Mr. Cack has a lot of holes in basically his actions. What went to the bankruptcy court, and we're going to step for the most recent thing, was that, quite frankly, the judge said that the arbitrator did not do what he was supposed to do. Where is that in the record before us? I don't have it in front of me, but it is in my filing. I don't have the page number, but I can find that. Well, we'll look for it, but you're saying it's in the record you presented to us. It's in the record. The audio of the judge. We don't listen to audio recordings, so that's not in the record. So we'll look at the record that properly exists, and if it's there, we'll find it. Basically, what the judge said was that the arbitrator didn't do what he was supposed to do. What he was supposed to do was to resolve all issues, and quite frankly, Mr. Cack is way out of base, because when this stipulation was made, it was made with Mr. Cack and my attorney. It was, we're going to resolve everything, and all of the things that's there is encapsulated in that, including the probate action, specifically there, and to give ideas as to what's happened. Once that was done, we got into the arbitration. Mr. Cack put together about, say, a box of probably seven to eight reams of paper dealing with the probate. He knew that that was what was going to happen. He knew that the probate would sink his ship, and so what he tried to do is to manipulate this to get rid of the probate, and that's what he tried to do. In the information that's presented, both in my brief, it's noted that what's happened was that the arbitrator said, look, I'm not so sure that I can handle the state court stipulations and issues. It's a sovereignty issue, because obviously this arbitrator doesn't have anything, no knowledge of state court three. I'm sorry. He has no knowledge of what he was told to do by the bankruptcy court, and that was to resolve all issues, including the state court issues, and that's where Mr. Cack has fallen off the bus. And it's specifically there. I've gone over it both on the opening brief and the reply brief, and it's right there in their chapter and verse that that's what happened, and all the parties agreed that the probate would be taken care of by the state court. I went back to the bankruptcy court before the arbitration took place, and I said, look, your honor, this is what's happening. Mr. Cack wants to shunt off the arbitration, and he wants to basically send that off to the state court for resolution, because quite frankly, before the bankruptcy got involved with it, it was a state court, and we came from the conservatorship, and by the way, what Mr. Cack says, dealing with my spending my mother's money is mooted, simply because we went from the conservatorship to the probate when Judge Rileson said in the California court, well, then why don't you, if you don't like what this situation is, why doesn't Southern California Conference take the two properties and manage it, and they said, nope, we want to do it. We're going to have Mr. Calkins continue to do that, and once he sells this, because we're coming out of the recession in 08 and 09, once you sell this, then we want the money, but we don't want to manage it, and I said, that's fine, we'll do that, and boom. We took care of the conservatorship and moved into the probate. Unfortunately, the bankruptcy court didn't get involved until 15, and we started in the 13. My mother died in 2007, so it gives you an idea how long this has been protracted to do this, and quite frankly, there's no reason for doing this, and now here we bring up to the situation where he has a order from the bankruptcy court that we can't do anything, we shouldn't do anything until the bankruptcy court had resolved. Well, unfortunately, this thing was taken care of, and the order was done before it was resolved, so Mr. Calkins is way out of line on that. One other issue, Mr. Calkins says that, well, you know, the state court is what's going to be handling. Mr. Calkins misnames the state court situation. It is not the Arizona we survived arbitration statutes, but it is the older statutes that the arbitration took place, and I have in my packet of information, it shows specifically it was Arizona, basically it was not the revised statutes. Mr. Calkins, your time is up, so last sentence. Thank you. You're done? All right, thank you. All right, this will be under submission. Thank you for both your arguments. You stay safe and well in these perilous times, and we will take it under submission and get back to you. Thank you very much.
judges: Taylor, Faris, Spraker